JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7254 | **DATE** | 11/20/2003 |
| **CASE TITLE** | VALENTINA KAZHINSKY vs. WILLIAM W. MEYER & SONS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (7-1) for summary judgment is granted. Summary judgment is entered in favor of defendant.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| DW | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 15

VALENTINA KAZHINKSY,

Plaintiff,

v.

WILLIAM W. MEYER & SONS, INC.,

Defendant.

No. 02 C 7254
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Valentina Kazhinksy has filed a one-count Complaint against William W. Meyer & Sons, Inc. alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Meyer & Sons now moves for summary judgment on the ground that her claim fails because she cannot establish the requisite *prima facie* case or, alternatively, that she cannot establish that Meyer & Sons' articulated reason for terminating her was pretext for age discrimination.

Factual Background

Kazhinksy began her employment at Meyer & Sons in 1990 as a mechanical drafter (or Level 6 Computed Aided Design ("CAD") Designer or mechanical designer) for the industrial product line in the company's Engineering Department. The industrial product line accounts for more than 70 percent of the company's sales. The engineering employees who process orders for the industrial product line are interchangeably referred to as mechanical drafters, mechanical designers, or CAD Designers. There is little variation in their duties regardless of which title is used, but a designer may be a more advanced and sophisticated position. Kazhinksy's

responsibilities included creating simple manufacturing and assembly drawings for rotary airlocks and working on more complex orders as well.

Beginning in 1995, Kazhinksy began receiving written performance reviews. Her 1995 review noted that although her overall performance "meets expectation," she needed to be more efficient with her time and more flexible regarding her supervisor's suggestions of corrections. Her 1996 review noted that she "has shown improvement in more efficient use of her time, " that the "quality of her work is improving," that her "productivity is improving," that she is "willing to pitch in and help with a problem when needed," that her "need for supervision has decreased," and that "her response to pressure and challenges is good." On the other hand, the review noted that she needed to strive for more consistency on time spent on drawings. Kazhinksy's 1997 review – apparently the first one prepared by Department Manager Mark Dunn, who appears to have had a particularly acrimonious relationship with Dunn – noted that her "quality of completed work is good," that the "amount of errors is not excessive," that she "is willing to pitch in when asked," that she "is able to demonstrate an understanding of skills necessary to perform her assignments," that her "reasoning is sound," and that she is "willing to work on any project assigned." However, the report also noted that she did not complete tasks in a timely manner, that her output was 20-25 percent of that which was expected, that she needed to dramatically improve her skill level to improve her work output, that she refused to accept constructive criticism and personal improvement objectives, that she needed to enroll in a design class to sharpen her design skills and allow her to complete her assignments more quickly, and that her performance needed to improve quickly and dramatically. Kazhinksy's 1998 review – once again prepared by Dunn – noted that her skill level needed to improve to increase output

and that the level of output was 30-40 percent of that which was expected. Kazhinksy's 1999 review originally noted that her performance did not meet expectations, but Dunn subsequently met with Meyer, and the two agreed to change her review to an overall "meets expectations." Kazhinksy's 2000 review noted that she continued to struggle with her quantity of work, that her output in 1999 had not increased over 1998, and that she needed to become more knowledgeable about special applications. Kazhinksy's 2001 review noted that her overall performance met Meyer & Sons' expectations and that she did her assigned work neatly and accurately but that her quantity of work did not meet expectations, that her product knowledge would be better if her production increased, and that she needed to increase work production and take on more responsibility.

In 2001, Meyer & Sons' total sales decreased by more than $2 million – a 14 percent drop in sales from the previous year. This decline was due to decreased demand for the company's industrial line products. In particular, sales of rotary airlocks decreased by 19 percent in 2001. This was the second consecutive year of declining sales for this product, and Meyer & Sons had no reason to believe sales would not continue to decline in 2002.

Because of the decline, Meyer & Sons President William Meyer, III determined that cutbacks were necessary in early 2002, especially in light of the fact that future forecasts looked equally bleak for the company and the economy as a whole.[1] As detailed in numerous company memos distributed to all employees and as discussed at company-wide meetings, Meyer & Sons had by that time already been scaling back on the amount of overtime it allowed engineering

---

[1] Vice President and Controller Nowak also appears to have been involved with the decision to terminate Kazhinksy, and appears to have come to the same conclusions to which Meyer came and in the same manner as Meyer did.

employees to work (from a total of 101 hours in 1998 to only 5.5 hours in 2001) and had periodically placed its shop employees on a shortened work week in an attempt to reduce costs. Meyer & Sons had also terminated outside contracts, shelved some research and development projects, and slashed its marketing budget in an effort to cut costs. Layoffs were to be a last resort, but they were deemed necessary in January 2002.

As such, Meyer decided lay off five employees, two of whom were in the Engineering Department, Luis Mendoza and Kazhinksy.[2] In deciding which employees to terminate, Meyer claims to have "intuitively" examined which departments had excess capacity, redundancy of employees, and simply a lack of workload due to the depressed business climate. Meyer claims to have reached the following conclusions: (1) that Meyer & Sons had excess capacity in virtually every department, including the Engineering Department; (2) that Meyer & Sons did not need six engineering employees to process the much lower volume of work as a result of significantly fewer orders coming in (in other words, that there was not enough work for all employees in the department); and (3) that although they were not being fired for performance reasons, Kazhinksy and Mendoza were the least valuable employees in that department based on their perceived unsatisfactory performance. Kazhinksy (61 years old) and Mendoza (63 years old) were the oldest full-time employees in the Engineering Department. Both were Level 6 Computer Aided Design ("CAD") Designers, but Meyer & Sons elected to retain its three Level 8 CAD Designers because they were viewed as being capable of performing more complex, as well as simpler, design tasks, and were therefore perceived as more versatile and valuable to the

---

[2] In addition, Meyer & Sons terminated three non-engineering employees. Two of these employees were substantially younger – *i.e.*, more than 10 years younger – than Kazhinksy, including one who was well under the age of 40.

reduced Engineering Department. Meyer & Sons also elected to retain its part-time Engineering Technician based on the perceived economic benefit of retaining one highly productive part-time employee over two full-time employees whose performances were viewed as substandard. In deciding to terminate Kazhinksy, Meyer did not (1) review her personnel file or work product, (2) speak to her supervisors, (3) consider any particular skill or grade level assigned to any CAD Designer, or (4) discuss his decision with Dunn.

More than a year and a half after their terminations, neither Kazhinksy nor Mendoza have been replaced, nor does Meyer & Sons have any immediate plans to replace them in the future. Instead, Kazhinksy's and Mendoza's duties were assumed by the three Level 8 CAD Designers, one of whom was just two years younger than Kazhinksy, and the Engineering Technician, who is older than Kazhinksy.

In August 2002 (eight months after Kazhinksy's termination), the company hired Steve Ansai. Although hired to assist with the company's efforts in the area of CNC programming, Ansai spent about 98 percent of his time during the first month of his employment processing orders, the same type of work that Kazhinksy had done. From September through December, the percentage of his time spent processing orders dropped to about 90 percent, but during November and December he did 62 "fairly easy" orders, the type of orders which Kazhinksy could have done. The orders that Ansai processed included orders for the Rodie Airlock product line, the line on which Kazhinksy worked. Meyer & Sons claims that Ansai spent time processing orders for training purposes in light of the fact that he would be involved in implementation of changes to the order process. Accordingly, by the end of 2002, the percentage of his time spent processing orders dropped to 80 percent, and by 2003, he was doing only "one or two" orders

5

sporadically, on an overflow basis, to help out the Engineering Department. By then, designing a tool fixture for a new manufacturing machine was taking up most of his time. Along with performing basic mechanical designing and drafting, Ansai's duties entail things Kazhinksy was not capable of doing. Although Ansai spent a small percentage of his time on CNC programming when first hired, he currently spends 50 percent of his time performing CNC programming, which was the primary reason he was hired.

Standard of Review

Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). Put another way, "where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate." *Collins v. American Optometric Association*, 693 F.2d 636, 639 (7th Cir. 1982). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Analysis

Under the ADEA, it is unlawful for an employer to discriminate against an employee because of that employee's age. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998); 29 U.S.C. § 623(a). To establish an ADEA violation, Kazhinksy must prove

6

intentional discrimination – *i.e.*, that her age actually motivated Meyer & Sons' decision to terminate her. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). While age need not have been the sole reason for her termination, she must show that "but for [Meyer & Sons'] motive to discriminate against [her] on the basis of [her] age, [she] would not have been discharged." *Adreani*, 154 F.3d at 393. Her burden of proof can be satisfied in one of two ways: (1) by submitting direct evidence of discriminatory intent, or (2) by using the indirect, burden-shifting method as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Kazhinksy has no direct evidence of discriminatory intent, she must rely on the *McDonnell Douglas* burden-shifting approach.

Under the *McDonnell Douglas* approach, Kazhinksy must first establish a *prima facie* case of age discrimination by a preponderance of the evidence. *Adreani*, 154 F.3d at 394. If she is able to do so, the burden shifts to Meyer & Sons to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action alleged. *Schuster*, 327 F.3d at 573. If Meyer & Sons articulates such a reason, the burden shifts back to Kazhinksy to show that Meyer & Sons' proffered reason is in fact pretext for unlawful discrimination. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 694 (7th Cir. 2000). She can establish pretext by producing evidence that Meyer & Sons was more likely than not motivated by a discriminatory reason or its proffered reason is unworthy of credence. *Id.*

### *Prima Facie* Case

To establish a *prima facie* case for an ADEA violation, Kazhinksy must show that: (1) she is a member of a protected class; (2) at the time of her termination, she was satisfying Meyer

7

& Sons' legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated younger employees. *Peele v. County Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). Because her position was not eliminated, as in the traditional reduction in force ("RIF") scenario, Kazhinksy's termination falls into a category the Seventh Circuit has dubbed "mini-RIF." *Michas*, 209 F.3d at 693-94. Therefore, in order to establish element (4), Kazhinksy must demonstrate that her duties were absorbed by employees who were not members of the protected class, rather than the traditional (4) described above. Meyer & Sons does not dispute that Kazhinksy satisfies elements (1) and (3) of her *prima facie* case, but it does dispute that she satisfy elements (2) and (4).

First, Meyer & Sons claims that Kazhinksy was not meeting its legitimate performance expectations at the time of her termination. While Kazhinksy's performance reviews do include positive remarks indicating satisfaction of performance expectations, they nonetheless demonstrate an increasing concern with her performance. From 1995 through 2001, Kazhinksy was repeatedly counseled regarding the need to increase her work output and improve her skills. Although there is a factual issue regarding to what extent Kazhinksy attempted to improve her skills and to what extent she accepted constructive criticism from her supervisor, these issues are ultimately irrelevant in light of continued remarks on the need to improve. And although the *quality* of Kazhinksy's performance was never in question, the *quantity* of work has been an issue at least since 1997. Simply put, regardless of how good her processed orders were upon completion, Kazhinksy processed those orders at a slow pace. Accordingly, I find that Kazhinksy was not satisfactorily performing her job duties.

Kazhinksy argues that Meyer's admission that she was not fired for performance reasons is evidence that she was satisfactorily performing her job duties. However, it is too much of a stretch to infer as a result of her not being fired for performance reasons that she was satisfactorily performing her duties, especially in light of the repeated references in her reviews expressing concerns with the quantity of her work. Regardless, Kazhinksy's argument regarding not being fired fails to address Meyer & Sons' main contention – that when layoffs became economically necessary and unavoidable, Kazhinksy was chosen because of her substandard work performance and the resulting fact that she was perceived (rightly or wrongly) to be less valuable to the Engineering Department than the other employees.

Even if Kazhinksy could show that she was satisfactorily performing her job duties, she cannot demonstrate that her job duties were absorbed by employees who were not members of the protected class. *Michas*, 209 F.3d at 693-94. Upon Kazhinksy's and Mendoza's departures, their duties were assumed by four individuals remaining in the Engineering Department: Donald Popovich (47 years old), Gregory Lehmann (59 years old), Jea Doo Seol (35 years old), and Ashley Kennedy (65 years old).[3] Because half of the individuals who assumed Kazhinksy's job duties were in the protected class, she cannot show that her duties were assumed solely or even primarily by employees outside the protected class. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000) (noting that the Seventh Circuit previously upheld a jury finding of age

---

[3] Kazhinksy claims that 33-year-old Natalya Volchek, a full-time CAD Designer for the commercial line of products, was part of the group that took over her former job functions, but there is no support for this statement anywhere in the record. Volchek has never worked on the industrial product line, to which Kazhinksy was exclusively assigned. In addition, the industrial and commercial product lines are substantially different, entail different work, and require different skills, with the commercial line being more complex.

9

discrimination in a case where the plaintiff's duties "were absorbed *mostly* by younger workers who retained their jobs during a departmental restructuring") (emphasis added); *see also Hamilton v. National Propane*, 276 F.Supp.2d 934, 946 (W.D. Wis. 2002) (holding that, "at minimum, case law indicates that plaintiff's duties need to be absorbed *mostly* by substantially younger employees, not entirely") (emphasis added).

Kazhinksy argues that Kennedy's role in assuming her former job duties is irrelevant because Kennedy was not "similarly situated" to Kazhinksy. However, there is no "similarly situated" requirement in a "mini-RIF" like the one here. *Michas*, 209 F.3d at 694. Rather, the only issue is whether retained employees absorbed Kazhinksy's duties, or "constructively replaced" her. *Bellaver*, 200 F.3d at 495; *Wichmann v. Board of Trustees of Souther Ill. Univ.*, 180 F.3d 791 (7th Cir. 1999) (fact that plaintiff's duties were absorbed by employees occupying different rungs in the hierarchy did not preclude a finding of discrimination because the "similarly situated" element was not required). The record is clear that Kennedy – regardless of his position title – was one of four individuals who constructively replaced Kazhinksy by absorbing her duties of filling orders on Meyer & Sons' industrial product line.

Pretext

Even if Kazhinksy could establish a *prima facie* case, she nonetheless cannot show Meyer & Son's articulated reason for her termination was pretext for age discrimination. Kazhinksy must specifically rebut this reason in order to successfully challenge its honesty and thus establish pretext. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). She must show that the articulation was "a dishonest explanation, a lie rather than an oddity or an error" or "deceit used to cover [its] tracks." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th

10

Cir. 2001). However, "[an] opportunity for rebuttal is not an invitation to criticize the employer's evaluation process or simply to question its conclusion about the quality of an employee's performance. Rather, rebuttal must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination." *Kariotis*, 131 F.3d at 677.

Here, Meyer's articulated reason for Kazhinksy's termination is that when layoffs became economically necessary and unavoidable, she was chosen because of her perceived substandard work performance and the resulting perception (rightly or wrongly) that she was less valuable to the Engineering Department than the other employees were. *See, e.g., Adreani*, 154 F.3d at 397 ("Only after the undisputed restructuring required the termination of some positions was [the plaintiff] discharged as one whose performance was less desirable than others."); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir. 1996) (economic downturn forced termination of one of three individuals in a particular position resulted in plaintiff's dismissal as "the least desirable of the three").

Kazhinksy first claims that Meyer must be lying about declining sales and the need to cut costs because she always had work to do. However, she fails to consider that because she processed orders at a slow pace, she completed fewer orders than she would have had she been more efficient. And Meyer & Sons' hiring of Ansai and his subsequent work in processing orders, which Kazhinksy formerly did, is also not indicative of pretext regarding the need to cut costs. *Michas*, 209 F.3d at 694-95 (where plaintiff pointed to employer's subsequent hiring of a consultant at a considerably higher wage as evidence of pretext, the Court declined to second-guess the employer's business decisions in the absence of evidence that it did not honestly believe that it needed to cut costs where it could). Even if employees such as Kazhinksy or

11

Ansai were kept busy processing orders, Meyer & Sons was not required to wait until employees were literally idle before it was justified in taking appropriate cost-cutting measures. *Michas*, 209 F.3d at 694-95 (employer need not be in "dire financial straits" before taking cost-cutting measures). In the end, Kazhinksy's argument does nothing to refute the honesty of Meyer's assessment of declining orders requiring processing, a decreasing backlog of orders, and no expectation of a turnaround in the near future.

Kazhinksy next claims that Meyer must be lying about his conclusion that she and Mendoza were the Engineering Department's least valuable employees. First, she claims that his poor decisionmaking process serves as evidence of pretext. She notes that he did not review her personnel file or work product, specifically consider the distinction between a Level 6 and Level 8 CAD Designer, or consult her supervisors in making the decision to terminate her. However, the fact that Meyer's decisionmaking process may have been subjective or informal does not mean he was lying about his opinion that her termination was necessary to cut costs. *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1031-32 (7th Cir. 1998) (where plaintiff claimed that employer's decisionmaking process was deficient because it did not review plaintiff's personnel file, request a resume, require more formal interviews, or seek more information from plaintiff's supervisors, the Court held that "the subjective nature of a selection process is not sufficient to demonstrate that age bias more likely motivated an employer's decision to terminate an employee"); *EEOC v. Rust-Oleum Corp.*, No. 89 C 5432, 1990 WL 71279 (N.D. Ill. Apr. 30, 1990) (where EEOC tried to create an inference of discrimination based on decisionmaker's failure to review plaintiff's personnel file, discuss plaintiff's qualifications with others, or otherwise apprise himself of all relevant information, the Court held that it "does not qualitatively review an employer's hiring decisions or the decisionmaking process."). The

ADEA is only concerned with Meyer's honest belief, and not whether his review process was "well-considered or precipitous." *O'Connor v. DePaul Univ.*, 123 F.3d 665, 670 (7th Cir. 1997).

Kazhinksy also claims that because she "did a good job" at Meyer & Sons, Meyer's conclusion that she was one of the Engineering Department's least valuable employees must be a lie. However, Kazhinksy's self-evaluation regarding her performance is unhelpful to establish pretext. *See Komel v. Jewel Cos.*, 874 F.2d 472, 475 (7th Cir. 1989) ("employee's 'own self-interested assertions . . . concerning her abilities are not in themselves sufficient to raise a genuine issue of materials fact.'" (quoting *Williams v. Williams Elec., Inc.*, 856 F.2d 920, 924-25 (7th Cir. 1988)). More importantly, even if Kazhinksy is correct that she indeed "did a good job" and that Meyer was incorrect in his assessment, this would have no bearing on the honesty of that assessment. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) ("evidence that shows that an employer incorrectly assessed its employee's abilities does not shed light on whether the employer is lying about that assessment.") Ultimately, "arguing about the accuracy of the employer's assessment is a distraction . . . because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest." *Kariotis*, 131 F.3d at 677 (quotations omitted). In addition, this Court must not "sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001) (citations omitted). Ultimately, if Meyer & Sons honestly believed its articulated non-discriminatory reasons for Kazhinksy's termination, she "loses even if the reasons are foolish or trivial or baseless." *Kariotis*, 131 F.3d at 676 (citations omitted).

Finally, Kazhinksy alleges a few comments alleged to have been made over the last five years of her employment that she claims reflected an age-related bias against her and thus

13

establish pretext. Kazhinksy alleges that Dunn: (1) called her "stupid" with regard to the way she parked her car in March 1999; (2) told her she was useless in response to her question about working overtime in March 1997; (3) occasionally told her that she was "from the 'old school' of doing things;" and (4) told her in 1997 that "at her 'age,' it was impossible for her to adapt to American reality." Even assuming for the sake of argument that the comments were made, they hardly support her age discrimination claim. The first two statements do not even relate to her age, and Kazhinksy's "subjective interpretation" to the contrary is irrelevant. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997). The second two statements are nothing more than "'stray' workplace remarks [that are] insufficient to raise an issue of material fact." *Schuster*, 327 F.3d at 576. Finally, derogatory comments made by non-decisionmakers such as Dunn cannot be relied upon as evidence of pretext. *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 n. 11 (7th Cir. 1997).

For the reasons above, Meyer & Sons' Motion for Summary Judgment is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 26 Nov 2003

14